UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
                                    :

INNOVATUS CAPITAL PARTNERS, LLC,      :

              Plaintiff,                :       1:18-cv-04252-LLS

                  :

          - against -            :

                  :

JONATHAN NEUMAN, ANTONY MITCHELL, RITZ  :
ADVISORS, LLC, GREG WILLIAMS, DARYL      :
CLARK, AND AMANDA ZACHMAN,        :

              :

           Defendants.           :

              :

-------------------------------------------------------------- X
              :

MV REALTY, PBC, LLC,           :

              :       1:18-cv-07142

             Plaintiff,            :

              :      **ANSWER AND**

         - against -         :      **COUNTERCLAIM**

              :

INNOVATUS CAPITAL PARTNERS, LLC,      :

              :

           Defendant.          :

              :

----------------------------------------------------------------------X

       Defendant and Counter-Plaintiff Innovatus Capital Partners, LLC, by and through its

undersigned attorneys, for its Answer to the Complaint of Plaintiff MV Realty, PBC, LLC ("MV

Realty") responds and alleges as follows, on knowledge as to itself and its own acts and on

information and belief as to all other matters:

## ANSWER

## INTRODUCTION

       1.     Defendant admits that Plaintiff purports to seek a declaration that Defendant may

not prohibit MV Realty from entering into agreements with homeowners by which the

homeowner receives an upfront payment in exchange for a first right of refusal to list the home when the homeowner decides to sell the home in the future.  Defendant denies the remaining allegations of Paragraph 1.

## PARTIES

2.      Defendant avers that it lacks knowledge and information sufficient to admit or deny the allegations in Paragraph 2.

3.      Defendant admits the allegations in Paragraph 3.

## JURISDICTION AND VENUE

4.      Defendant admits that Defendant is a citizen of New York, Connecticut and Sweden.  Defendant avers that it lacks knowledge and information sufficient to admit or deny the allegation of Plaintiff's citizenship.  No response is required to the remainder of Paragraph 4 because it states legal conclusions.  To the extent a response is required to the remainder of Paragraph 4, Defendant denies the remaining allegations in Paragraph 4.

5.      Defendant admits that venue is appropriate in the Southern District of New York and that Innovatus resides within the Southern District of New York.  No response is required to the remainder of Paragraph 5 because it states legal conclusions.  To the extent a response is required to the remainder of Paragraph 5, Defendant denies the allegations in the remainder of Paragraph 5.

## FACTUAL ALLEGATIONS

6.      Defendant admits that it is a New York investment firm which maintains over $1.6 billion in assets under management.

7.      Defendant avers that it lacks knowledge and information sufficient to admit or deny the allegations in Paragraph 7.

8.     Defendant avers that it lacks knowledge and information sufficient to admit or deny the allegations in Paragraph 8.

9.     Defendant avers that it lacks knowledge and information sufficient to admit or deny the allegations of Paragraph 9.

10.     Defendant avers that it lacks sufficient knowledge and information to admit or deny the allegations in Paragraph 10.

11.     Defendant admits the allegations of Paragraph 11.

12.     Defendant admits the allegations of Paragraph 12, except denies that this occurred on the same conference call referenced in Paragraph 11 and avers that Mr. Schiff expressed the interest in discussing another potential collaboration with Neuman and Mitchell following statements by Neuman on the conference call referenced in Paragraph 11 that Neuman owned a residential real estate brokerage firm, MV Realty, and also was involved in a business for purchasing residential real estate customer leads and using technology to evaluate those leads.

13.     Defendant admits the allegations of Paragraph 13 except denies that at the time, Schiff was aware that Neuman and Mitchell had extensive experience securitizing asset classes that had not previously been securitized.

14.     Defendant admits the allegations of Paragraph 14, except denies that this occurred on the same conference call referenced in Paragraph 11 and avers that Innovatus believed, and told Neuman and Mitchell at the time, that no other actor in the marketplace was pursuing the potential business opportunity and the fact that Innovatus was pursuing it was not available in the public domain.

15.     Defendant admits the allegations of Paragraph 15 except avers that it lacks sufficient knowledge and information to admit or deny the allegation that Neuman owned and operated Ritz Advisors, LLC.

16.     Defendant avers that it lacks sufficient knowledge and information to admit or deny the allegations in Paragraph 16.

17.     Defendant admits the allegations of Paragraph 17.

18.     Defendant admits the allegations of Paragraph 18.

19.     Defendant admits that the NDA contains the language quoted in Paragraph 19 and otherwise denies the allegations of Paragraph 19.

20.     Defendant admits that the Term Sheet was sent to Neuman, Miller and Ritz along with the NDA and admits that the Term Sheet contains the language quoted in Paragraph 20, and otherwise denies the allegations of Paragraph 20.

21.     Defendant admits that the NDA contains the language quoted in Paragraph 21 and otherwise denies the allegations of Paragraph 21.

22.     Defendant admits that the Term Sheet contains the language quoted in Paragraph 22 and otherwise denies the allegations in Paragraph 22.

23.     Defendant admits the allegations of Paragraph 23.

24.     Defendant admits that the "Business Opportunity" proposed by Innovatus was related to the purchase of a large number of real estate listing agreements (i.e., agreements in which homeowners agree to use a specified real estate broker on an exclusive basis) and the potential securitization of such real estate listing agreements.  Defendant denies the remaining allegations of Paragraph 24.

25.     Defendant admits that Innovatus indicated to Neuman and Mitchell its belief that the Business Opportunity had significant value and admits that the health of the market for the securitization of assets and the fact that no investment firm had ever securitized this type of asset before were among the reasons Innovatus indicated to Neuman and Mitchell why it believed that the Business Opportunity had significant value, and avers that on the same call it indicated to Neuman and Mitchell that the value of RTL transactions themselves was the more substantial reason why Innovatus believed the Business Opportunity had significant value.  Defendant denies the remaining allegations of the first sentence of paragraph 25.  Defendant admits the allegations of the second sentence of Paragraph 25.

26.     Defendant admits the allegations of Paragraph 26.

27.     Defendant admits that, at the time that Innovatus approached Neuman and Mitchell, Innovatus was aware that Neuman and Mitchell had extensive experience originating (not securitizing) asset classes that had not been previously securitized.  Defendant denies the remaining allegations of the first sentence of Paragraph 27.  Defendant admits that one component of the Business Opportunity identified by Innovatus was the potential securitization of real estate listing agreements, an asset which had not previously been securitized, as one of several potential means of financing more RTL transactions.  Defendant denies the remaining allegations of the second sentence of Paragraph 27.

28.     Defendant admits that Innovatus proposed that an entity designated by Neuman and Mitchell would be responsible for the day-to-day process of entering into real estate listing agreements with customers, and that an entity designated by Innovatus would be responsible for structuring and distribution of securities to be issued in connection with the potential securitization of such real estate listing agreements in the future.  Defendant avers that it

proposed, and Neuman and Mitchell accepted, that both sides were to be intimately involved in the development of all facets of the business.  Defendant denies the remaining allegations of Paragraph 28.

29.     Defendant denies the allegations of Paragraph 29 and avers that David Schiff told Neuman and Mitchell that he had first become aware of the concept of the Business Opportunity in the early 2000's.

30.     Defendant admits the allegations of Paragraph 30 except avers that it lacks sufficient knowledge or information to admit or deny the allegation that Neuman and Mitchell were acting in their individual capacities.

31.     Defendant admits the allegations of Paragraph 31.

32.     Defendant admits the allegations of Paragraph 32.

33.     Defendant admits the allegations of Paragraph 33.

34.     Defendant admits that MV Realty is a South Florida real estate brokerage. Defendant lacks sufficient knowledge or information to admit or deny that MV Realty was established in 2004.  Defendant denies the remaining allegations of Paragraph 34.

35.     Defendant denies the allegations in the first sentence of Paragraph 35 and avers that based on representations and actions by Neuman and Mitchell, Innovatus believed that Neuman and Mitchell controlled MV Realty.  Defendant avers that it lacks sufficient knowledge or information to admit or deny the allegation that Neuman was not an authorized manager of MV Realty.

36.     Defendant denies the allegations of Paragraph 36 and avers that Innovatus, Neuman and Mitchell made the joint decision to have MV Realty approach MV Realty's clients and enter into listing agreements with homeowners using the Right to List Agreement.

37.     Defendant admits the allegations of Paragraph 37 and avers that the Right To List Agreement contained a confidentiality clause that bound homeowners who signed it.

38.     Defendant admits the allegations of Paragraph 38.

39.     Defendant admits the allegations of Paragraph 39.

40.     Defendant admits the allegations of Paragraph 40.

41.     Defendant admits the allegations in the first sentence of Paragraph 41.  Defendant admits that the term of the NDA executed by Neuman, Mitchell and Ritz on August 24, 2017 was longer than one year.  The remaining allegations of Paragraph 41 do not require a response as they state legal conclusions.  To the extent the remaining allegations of Paragraph 41 require a response, Defendant denies the remaining allegations of Paragraph 41.

42.     Defendant admits the allegations of Paragraph 42.

43.     Defendant admits that MV Realty did not execute the joinder agreement and that MV Realty entered into dozens of additional Right to List Agreements with homeowners with the knowledge and consent of Innovatus.  Defendant denies the remaining allegations of Paragraph 43.

44.     Defendant admits the allegations of Paragraph 44.

45.     Defendant admits the allegations of Paragraph 45 except avers that it lacks sufficient knowledge or information to admit or deny the allegation that MV Realty shared the Right to List Agreement with many other prospective customers who elected not to enter into an agreement.

46.     Defendant admits the allegations in Paragraph 46 and avers that the parties agreed to split all expenses of the RTL business including commissions and payments to homeowners, as well as legal fees, which would be trued up at the time of the joint venture's formation, and

also avers that it offered several times to share equally in the expenses incurred by MV Realty in soliciting and entering into Right to List Agreements with customers in advance of the joint venture's formation.

47.     Defendant admits the allegations in Paragraph 47.

48.     Defendant admits that in or about November 2017, Innovatus, Neuman and Mitchell learned of several patents that had been issued to third parties before Neuman and Mitchell executed an NDA with Innovatus.  Defendant denies the remaining allegations of Paragraph 48.

49.     Defendant admits the allegations in Paragraph 49.

50.     Defendant admits the allegations in Paragraph 50.

51.     Defendant admits the allegations in Paragraph 51.

52.     Defendant admits the allegations in the first sentence of Paragraph 52.  Defendant admits that the NDA contains the language quoted in the second and third sentences of Paragraph 53, and respectfully refers the Court to Sections 1 and 2 of the NDA for their terms. Defendant denies the remaining allegations in Paragraph 52.

53.     Defendant admits the allegations in Paragraph 53 and avers that Innovatus also communicated to Neuman and Mitchell, and Neuman and Mitchell agreed, that one purpose of the NDAs was to prevent the employees from disclosing the Business Opportunity in the marketplace and put Innovatus' first-mover advantage at risk.

54.     Defendant admits the allegations in Paragraph 54.

55.     Defendant admits the allegations in Paragraph 55, including footnote 1, except denies that Amanda Zachman signed the NDAs exclusively in her individual capacity.

56.     Defendant admits the allegations in Paragraph 56.

8

57.     Defendant admits that the Term Sheet provided for 50/50 ownership of the Joint Venture and denies the remaining allegations in Paragraph 57.

58.     Defendant admits that, following execution of the Term Sheet, Innovatus and Neuman and Mitchell agreed that control of the Joint Venture would generally be shared 50/50. Defendant admits that Innovatus and Neuman and Mitchell agreed that decisions of the Board of Directors would generally require a majority vote, and that the Board of Directors would initially have four directors, two of which would be designated by Innovatus, and two of which would be Neuman and Mitchell or their designees. Defendant denies any other allegations in Paragraph 58.

59.     Defendant admits that the Term Sheet provided for an Exclusivity Period of 60 days, subject to a one-time 60-day extension, and denies the remaining allegations in the first sentence of Paragraph 59.  Defendant admits the allegations in the second sentence of Paragraph 59.  Defendant denies the allegations in the third sentence of Paragraph 59.  Defendant avers that it lacks sufficient knowledge or information to admit or deny the allegations in the fourth sentence of Paragraph 59.

60.     Defendant denies the allegations of Paragraph 60.

61.     Defendant admits that April 2018 is nearly eight months after Innovatus first approached Neuman and Mitchell.  Defendant admits that in the course of negotiations it demanded that in the event that Neuman or Mitchell were no longer able to serve as a director due to certain misconduct, their replacement would be required to be independent of Neuman and Mitchell, and avers that this became critical to Innovatus as it learned details of Neuman's and Mitchell's history of misconduct, including their participation as President/COO and CEO, respectively, of Imperial Holdings ("Imperial") in a scheme to defraud life insurance companies, in which Imperial facilitated and/or made misrepresentations on life insurance applications that

the prospective insureds were not using premium financing.  Defendant avers that, according to public filings in Case No. 15-cv-00526 (D. N.H.) and the Form 8-K filed by Imperial on April 30, 2012, Neuman paid $5 million and Imperial paid $8 million to settle with the SEC. Defendant denies the remaining allegations in Paragraph 61.

62.     Defendant denies the allegations in Paragraph 62.

63.     Defendant denies the allegations in Paragraph 63 except admits that a conference call took place on April 30, 2018 among Innovatus and Neuman and Mitchell.

64.     Defendant denies the allegations in Paragraph 64 except admits that a conference call took place on April 30, 2018 among Innovatus and Neuman and Mitchell.

65.     Defendant denies the allegations in Paragraph 65 except admits that a conference call took place on April 30, 2018 among Innovatus and Neuman and Mitchell and admits that Schiff suggested that the parties should involve their separate legal counsel.

66.     Defendant admits that Neuman sent an email to David Schiff on May 1, 2018 in which Neuman provided contact information for Neuman's outside counsel and asked to arrange a call with outside counsel for Innovatus.  Defendant avers that it lacks sufficient knowledge or information to admit or deny the allegations in the second sentence of Paragraph 66.  Defendant denies the remaining allegations in Paragraph 66.

67.     Defendant admits the allegations in the first sentence of Paragraph 67.  Defendant denies the allegations in the second sentence of Paragaph 67 except admits that a May 11, 2018 email from Innovatus' counsel to Neuman's counsel asked if Neuman's counsel would accept service of the complaint on behalf of any or all defendants.

68.     Defendant admits the allegations in Paragraph 68.

69.     Defendant admits the allegations in the first three sentences of Paragraph 69. Defendant denies the allegations in the fourth sentence of Paragraph 69.

70.     Defendant admits that MV Realty did not sign the joinder agreement proposed by Innovatus.  Defendant admits that, under the proposed joinder agreement, MV Realty would have been subject to continued performance, including but not limited to non-disclosure, for a period exceeding one year.  Defendant admits the allegations in footnote 2 of Paragraph 70. Defendant denies the remaining allegations in Paragraph 70.

71.     Defendant admits that counsel for the defendants named in the Innovatus Complaint wrote to counsel for Innovatus on May 14, 2018; and admits that the May 14, 2018 letter stated, "all pending RTL transactions have been cancelled.  In addition, no new RTL transactions are being processed or written, and all staff have been advised accordingly;" and admits that the May 14, 2018 letter also stated, "please have Innovatus identify the Confidential Material ... Once Innovatus has identified the Confidential Material, the Receiving Parties will undertake promptly to comply with their obligations under Section VI of the NDAs."  Defendant avers that it relied on the statement in the May 14, 2014 letter that all pending RTL transactions have been cancelled in refraining from pursuing immediate injunctive relief.  Defendant denies the remaining allegations in paragraph 71.

72.     Defendant denies the allegations in Paragraph 72 except admits that counsel for defendants named in the Innovatus Complaint wrote to counsel for Innovatus on June 6, 2018, and that the June 6, 2018 letter included the statement, "I am writing to ask that Innovatus identify the scope of the injunction it seeks."

73.     Defendant denies the allegations in the first sentence of Paragraph 73.  Defendant avers that it lacks sufficient knowledge and information to admit or deny the remaining allegations in Paragraph 73.

74.     Defendant admits the allegations in Paragraph 74.

75.     Defendant admits the allegations in Paragraph 75 except avers that it lacks sufficient knowledge or information to admit or deny the allegations in footnote 3.

76.     Defendant avers that it lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 76.

77.     Defendant avers that it lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 77.

78.     Defendant avers that it lacks sufficient knowledge or information to admit or deny the allegations in the first sentence of Paragraph 78.  Defendant admits that Innovatus did not require MV Realty to execute a non-disclosure agreement and that Innovatus permitted MV Realty to disclose the form Right to List Agreement to prospective customers without requiring the prospective customers to sign a confidentiality agreement.  Defendant denies the remaining allegations in the second sentence of Paragraph 78.

79.     Defendant admits the allegations in Paragraph 79.

80.     Defendant admits that the disclosures in the Harrington Patent, which include the concept of transactions with homeowners by which the homeowner receives an upfront payment in exchange for giving a real estate brokerage the first right of refusal to list the home when the homeowner decides to sell the home in the future, are in the public domain.  Defendant avers that it lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 80.

**COUNT ONE**

81.     Paragraph 81 does not require a response. To the extent it does require a response, Defendant denies the allegations in Paragraph 81.

82.     Defendant denies the allegations in Paragraph 82 except admits that Defendant seeks an injunction that will prohibit MV Realty from undertaking certain activities in connection with the Business Opportunity and Confidential Information.

83.     Defendant denies the allegations in Paragraph 83.

84.     Defendant admits the allegations in the first sentence of Paragraph 84.  Defendant admits that the concept of entering into agreements with homeowners by which the homeowner receives an upfront payment in exchange for giving a real estate brokerage the first right of refusal to list the home when the homeowner decides to sell the home in the future has been disclosed in the public domain, unbeknownst to the parties at the time that they embarked on their business relationship, and denies the remaining allegations of the second sentence of Paragraph 84.

85.     No response is required to Paragraph 85 as it states a legal conclusion.  To the extent a response to Paragraph 85 is required, Defendant denies the allegations in Paragraph 85.

86.     Defendant admits the allegations of Paragraph 86.

**PRAYER FOR RELIEF**

Defendant denies that Plaintiff is entitled to a judgment or any other relief requested in the Prayer for Relief.

**AFFIRMATIVE DEFENSES**

Without assuming the burden of proof of such defenses that Defendant would not otherwise have, Defendant affirmatively asserts the following defense:

## **First Affirmative Defense**

The claims in the Complaint are barred, in whole or in part, by the doctrine of estoppel.


WHEREFORE, Defendant prays as follows:

That judgment be rendered in favor of Defendant;

That Defendant be awarded its costs of suit incurred in the defense of this action; and

For such other and further relief as the Court deems proper.


## **COUNTERCLAIM**

1.      Defendant and Counter-Plaintiff Innovatus brings this counterclaim seeking, *inter alia*, preliminary and permanent injunctive relief enjoining Plaintiff and Counter-Defendant MV Realty and its associates from using an innovative business opportunity and related confidential information developed by Innovatus, and disclosed to certain employees, owners and associates of MV Realty by Innovatus.  Innovatus disclosed the business opportunity and related confidential information to certain employees, owners and associates of MV Realty for the sole purpose of the evaluation of a potential business partnership between Innovatus and certain associates of MV Realty and only after certain MV Realty employees, owners and associates signed non-disclosure and non-circumvention agreements in which they agreed not to pursue the business opportunity except together with Innovatus and not to use the confidential information without Innovatus' consent.

2.      Now MV Realty has declared its intention to pursue the business opportunity without Innovatus' consent and has taken preparatory steps to do so, including obtaining a license to use a patent associated with the business opportunity.  MV Realty's pursuit of the

business opportunity has caused and will cause its employees and owners to violate their non-disclosure and non-circumvention agreements with Innovatus.  The actions of MV Realty threaten Innovatus with irreparable harm in the loss of a unique ability to exploit this business opportunity as the first, or one of the very first, investment firms to do so.

3.     Innovatus developed an innovative method and process related to real estate transactions (the "**Business Opportunity**") and identified Jonathan Neuman and Antony Mitchell as potential partners to help pursue the Business Opportunity.  Neuman is a minority owner of Counter-Defendant MV Realty and Innovatus believed Neuman and Mitchell controlled MV Realty.  Innovatus required Neuman, Mitchell and Neuman's company Ritz Advisors LLC ("**Ritz**") to enter into a Non-Disclosure Agreement (a "**Non-Disclosure Agreement**" or "**NDA**") before disclosing the Business Opportunity to Neuman and Mitchell and engaging in detailed discussions with them concerning the Business Opportunity.  The NDA prohibits Neuman, Mitchell and Ritz from circumventing Innovatus or undertaking any work or transactions in connection with the Business Opportunity without Innovatus' consent.  The NDA also prohibits Neuman, Mitchell and Ritz from using any confidential information provided to them by Innovatus for any purpose other than to further their business relationship with Innovatus.

4.     Beginning in August 2017, pursuant to the NDA and a Term Sheet for a formal joint venture agreement signed by Innovatus and Neuman, Mitchell and Ritz (the "**Term Sheet**"), Innovatus, Neuman and Mitchell engaged in extensive planning, development and other joint actions to pursue the Business Opportunity. As part of this process, Innovatus generated and disclosed to Neuman and Mitchell certain non-public analyses and information subject to confidentiality restrictions set forth in the NDAs (the "**Confidential Information**").

5.      Neuman and Mitchell involved MV Realty in the project, including employees Daryl Clark (CFO), Greg Williams (a licensed real estate agent) and Amanda Zachman (a licensed real estate broker and 50% owner of MV Realty).  Before these individuals began working on the project, Innovatus required them to sign NDAs that prohibited them from pursuing the Business Opportunity or using or disclosing Innovatus' Confidential Information without Innovatus' consent.

6.      In April 2018, Neuman and Mitchell unilaterally ended the joint efforts with Innovatus to pursue the Business Opportunity unexpectedly and without cause. Neuman and Mitchell informed Innovatus that they intended to pursue the Business Opportunity without Innovatus' participation or consent.  Subsequently, on information and belief, Neuman, Mitchell and their associates—including MV Realty employees—have continued to pursue the Business Opportunity without Innovatus' participation or consent, in violation of the NDAs. For example, counsel for MV Realty has recently revealed that MV Realty has obtained a license to use a patent associated with the Business Opportunity.

7.      Most significantly, in its August 8, 2018 complaint against Innovatus in this Action, as well as in statements to Innovatus's counsel and to the Court by MV Realty's counsel, MV Realty has declared its intention to pursue the Business Opportunity without Innovatus' participation or consent.

8.      MV Realty's use of the Business Opportunity and Confidential Information without Innovatus' consent will cause irreparable harm to Innovatus by, among other things, depriving Innovatus of its position as the first, or one of the very first, investment firms in the United States exploiting this Business Opportunity.

9.      In this action, Innovatus seeks preliminary and permanent injunctive relief enjoining MV Realty from causing its employees and owners to breach their NDAs with Innovatus and enjoining MV Realty's associates, owners and employees from implementing, pursuing or utilizing the Business Opportunity or using, relying on or disclosing any Confidential Information without Innovatus' consent.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332.  Counter-Plaintiff is a citizen of New York, Connecticut and Sweden.  On information and belief, Counter-Defendant is a Florida limited-liability corporation with no members who are citizens of New York or Connecticut or are aliens.  The amount in controversy exceeds $75,000.

11.     Venue is appropriate in the Southern District of New York because Counter-Defendant has brought suit against Counter-Plaintiff in this district.

## THE PARTIES

12.     Counter-Plaintiff Innovatus is a Delaware limited liability company whose members are all citizens of New York, Connecticut or Sweden.

13.     Counter-Defendant MV Realty is a Florida limited liability company whose members are all citizens of Florida.

## FACTUAL ALLEGATIONS

### A.  THE BUSINESS OPPORTUNITY

14.     Innovatus was founded in 2016 as an independent investment adviser and portfolio management firm. Innovatus has approximately $1.6 billion in assets under management. The firm is headquartered in New York, New York.

15.     Innovatus developed an innovative method and process related to real estate transactions (the Business Opportunity). As far as Innovatus is aware, this method and process is not currently in use anywhere in the United States, apart from the improper efforts of MV Realty and its employees, owners and associates to exploit it in violation of its employees' NDAs.

16.     The prospect of being, on information and belief, the first or one of the very first investment firms in the United States to utilize this particular method and process and exploit the Business Opportunity is extremely valuable. The benefits to Innovatus are both reputational and financial.

17.     Innovatus determined that it would be advantageous to partner with a real estate brokerage firm in order to pursue the Business Opportunity. In August 2017, Innovatus approached Neuman and Mitchell as potential partners for this purpose.  Neuman is a minority owner of Counter-Defendant MV Realty and, upon information and belief, with Mitchell, controls MV Realty.  Neuman and Mitchell's control over MV Realty is evidenced, among other things, by the fact that three days after Innovatus brought suit against them in May 2018, their counsel informed Innovatus's counsel in writing that all pending RTL transactions between MV Realty and customers had been cancelled.

18.     The Business Opportunity requires the participation of a real estate brokerage firm.  It would have made no sense for Innovatus to partner with Neuman and Mitchell unless Neuman and Mitchell controlled a real estate brokerage firm.  Neuman represented that he and Mitchell controlled MV Realty.

19.     From approximately August 2017 until April 2018, Innovatus and Neuman and Mitchell worked together to pursue the Business Opportunity, subject to the terms of the Non-Disclosure Agreements. Pursuant to the Term Sheet and the Non-Disclosure Agreements, the

parties negotiated and drafted a detailed joint venture agreement in addition to several other documents necessary for the parties' joint pursuit of the Business Opportunity. As part of this collaborative process, Innovatus created and disclosed to Neuman, Mitchell and their associates numerous analyses and other information that was critical to the parties' pursuit of the Business Opportunity. All of this material was and is Confidential Information under the NDAs.

20.    Among other things, Innovatus prepared and disclosed to Neuman, Mitchell and their associates a detailed business plan, tracking metrics and a financial model for implementation of the Business Opportunity. In addition, Innovatus was integral in the drafting and development of a complex "Right to List" ("**RTL**") form contract to be utilized in connection with the Business Opportunity, which was initially drafted by a law firm jointly retained by Innovatus and Ritz for that purpose. These and other analyses and information disclosed by Innovatus to Neuman, Mitchell and their associates are of great value to the parties in connection with the Business Opportunity and are Confidential Information.

**B.  THE NON-DISCLOSURE AGREEMENTS**

21.    On August 24, 2017, immediately after making initial contact with Neuman and Mitchell, Innovatus entered into a Non-Disclosure Agreement with Neuman, Mitchell and Ritz, with Innovatus as the Disclosing Party and Neuman, Mitchell and Ritz as the Receiving Parties. Subsequently, Innovatus and MV Realty PBC, LLC as Disclosing Parties entered into Non-Disclosure Agreements with each of Williams and Zachman as Receiving Parties on October 20, 2017. An NDA with Clark as Receiving Party was signed on January 22, 2018, with Innovatus, Mitchell, Neuman and Ritz as the Disclosing Parties.

22.    Each NDA contains the following language (or nearly identical language that differs only in non-substantive respects) (the "**Non-Circumvention Provision**"):

**Non-Circumvention.** In addition, in connection with the Business Opportunity, the Receiving Parties agree not to circumvent the Disclosing Party and shall not work with any business associates, affiliates, partners, representatives, investors. vendors, clients or other third party unless such approval is specifically granted in written form by the Disclosing Party on a case-by-case basis, which approval may be withheld in the Disclosing Party's sole discretion. The Receiving Parties further agree not to undertake any transaction or a series of transactions of any kind in connection with the Business Opportunity without the express prior written agreement of the Disclosing Party, which agreement may be withheld in the Disclosing Party's sole discretion. This non-circumvention provision shall expire at the end of three (3) years from the termination of this Agreement and this provision, and any other provisions necessary to enforce this provision, shall survive any such termination of this Agreement.

23.     The Business Opportunity is defined in the NDAs.

24.     Each NDA has a three-year term.  As such, the Non-Circumvention Provision has a term of six years.

25.     The Non-Circumvention Provision could not be clearer.  The Receiving Parties in each NDA agreed that for a period of six years they would not circumvent Innovatus, pursue the Business Opportunity without Innovatus or Innovatus' consent, or undertake any transaction of any kind in connection with the Business Opportunity without Innovatus' prior written agreement.

26.     The NDAs restricted the Receiving Parties' use of Confidential Information.  The NDA with Neuman, Mitchell and Ritz contains the following definition of Confidential Information  (the "**Confidential Information Definition**"):

**Confidential Information.** For purposes of this Agreement, "Confidential Information" means all nonpublic information disclosed by Disclosing Party including, but not limited to, all tangible, intangible, visual, electronic, present or future information such as but not limited to: (a) all intellectual property, including but not limited to patents and patent applications, and trade secrets; (b) financial information or personnel matters relating to products, employees, investors or business; (c) technical information, including research, procedures, processes, specifications, designs, development, data and know-how; (d) historical, current and prospective business information, including, operations, planning, marketing interests, products (including product formulations and test data), and client and

distributor lists; (e) the terms of any agreement to which Disclosing Party is a party; (f) discussions, negotiations or proposals related to agreements; and (g) any other item, including but not limited to all writings, illustrations, photographs or other information which Disclosing Party deems to be proprietary or confidential. All Confidential Information shall be subject to the terms of this Agreement whether marked as "Confidential" or not and whether disclosed orally, electronically, in writing or other media.

27.    The NDAs with Williams and Zachman as Receiving Party contain the following

substantively similar definition of Confidential Information:

**Confidential Information.** For purposes of this Agreement, "Confidential Information" means all nonpublic information disclosed by the Disclosing Parties including, but not limited to, all tangible, intangible, visual, electronic, historical, present or future information such as, but not limited to: (a) information relating to the Disclosing Parties, their affiliates, and the Disclosing Parties' and their affiliates respective businesses, operations, properties and assets; (b) information relating to a Business Opportunity including, without limitation, the identity and nature of the opportunity, all information relating to the operations, properties and assets of such Business Opportunity, any business plans, strategies and prospects relating to any Business Opportunity and, in each of the foregoing cases, any information relating to (i) any affiliate, stockholder, investor, principal, member, equity owner, manager, officer, director and employee, as applicable, (ii) any past, potential or existing client, counterparty, customer, broker, agent, distributor, financing source, vendor, supplier, agent, representative or business associate, as applicable, (iii) all intellectual property, including but not limited to patents and patent applications, and trade secrets; (iv) technical information, including research, procedures, processes, specifications, designs, development, data and know-how, (v) the terms of any agreement to which any of the Disclosing Parties is a party, (vi) discussions, negotiations or proposals related to such agreements, (vii) the fact that Confidential Information has been disclosed to you, and (viii) any other item, including but not limited to all writings, illustrations, photographs or other information which the Disclosing Parties deem to be proprietary or confidential. All Confidential Information shall be subject to the terms of this Agreement whether marked as "Confidential" or not and Whether disclosed orally, electronically, in writing or other media. You acknowledge and agree that the Receiving Party's entry into this Agreement is not a condition of the Receiving Party's employment with MV and that such, decision to enter into this Agreement is made by the Receiving Party in his or her sole discretion. The Receiving Party also acknowledges that he or she has had the opportunity to consult with an attorney prior to entering into this Agreement.

28. The NDA with Clark as Receiving Party contains a definition of Confidential Information that is substantively identical to the definition in the NDAs with Williams and Zachman.

29. Plaintiffs provided substantial Confidential Information to Neuman, Mitchell, Clark, Williams and Zachman in the course of their joint pursuit of the Business Opportunity.

30. The NDAs prohibited Receiving Parties' use of Confidential Information.  The NDA with Neuman, Mitchell and Ritz as Receiving Parties contains the following provision (the "**Confidential Information Obligations Provision**", and together with the Confidential Information Definition, the "**Confidentiality Provisions**"):

> **Obligations Regarding Confidential Information.** The Receiving Parties (a) shall restrict disclosure of Confidential Information solely to their employees on a need to know basis provided such employees have executed confidentiality agreements reasonably satisfactory to the Company prior to any such disclosure, (b) shall protect the Confidential Information with at least the same degree of care and confidentiality as they afford their own confidential information, at all times exercising at least a commercially reasonable degree of care in such protection, and (c) shall not use any Confidential Information in any manner except in furtherance of Receiving Parties' business relationship with Disclosing Party, or as otherwise agreed by the Disclosing Party in writing. Notwithstanding the foregoing, the Receiving Parties may disclose Confidential Information pursuant to an order of a court or governmental agency as so required by such order, provided that the Receiving Parties shall first notify the Disclosing Party of such order and afford the Disclosing Party the opportunity to seek a protective order relating to such disclosure. The Receiving Parties agree to notify the Disclosing Party immediately if any Receiving Party learns of any use or disclosure of any Disclosing Party Confidential Information in violation of the terms of this Agreement.

31. Pursuant to subsection (c) of this Confidential Information Obligation Provision, in pursuing the Business Opportunity, Neuman, Mitchell and Ritz are prohibited from using any of Innovatus' Confidential Information without Innovatus' consent.

32. The NDAs with Williams and Zachman as the Receiving Party contain the following Confidential Information Obligations Provision:

**Obligations Regarding Confidential Information.** The Receiving Party recognizes and acknowledges the competitive value and confidential nature of the Confidential Information and the damage that could result to the Disclosing Parties if any information contained therein is disclosed to a third party except as otherwise expressly provided herein. The Receiving Party (a) shall protect the Confidential Information with at least the same degree of care and confidentiality as it affords its own confidential information, at all times exercising at least a commercially reasonable degree of care in such protection, and (b) shall not use any Confidential Information in any manner except for the purpose of evaluating the Business Opportunity solely to the extent involving the Disclosing Parties and for no other purpose, and the Receiving Party shall not use the Confidential Information in any way detrimental to the Disclosing Parties.

33.    The NDA with Clark contains a Confidential Information Obligations Provision that is substantively identical to the provision in the NDAs with Williams and Zachman.

34.    Pursuant to subsection (b) of this Confidential Information Obligations Provision, Williams, Clark and Zachman are prohibited from using any of Innovatus' Confidential Information except to evaluate the Business Opportunity "solely to the extent involving the Disclosing Parties and for no other purpose". Subsection (b) also provides that Williams, Clark and Zachman shall not use Innovatus' Confidential Information "in any way detrimental to the Disclosing Parties."

35.    Each of the NDAs remains in effect. The NDA between Innovatus and Neuman, Mitchell and Ritz has an Effective Date of August 24, 2017. Williams's and Zachman's NDAs have an Effective Date of October 20, 2017. Clark's NDA has an Effective Date of January 22, 2018. Each NDA terminates automatically three years after the agreement's Effective Date (the "**Termination Date**"). The NDAs do not provide for any means of terminating the NDA prior to the Termination Date except by amending the NDA in a writing signed by all parties thereto. No NDA has been amended. Consequently, none of the NDAs has terminated. Moreover, the Non-Circumvention Provision in each NDA remains binding until three years after the

termination of the NDA.  Thus, all NDAs' Non-Circumvention Provisions will remain in effect until at least 2023.

36.     MV Realty was aware of the NDAs entered into by Neuman, Mitchell, Ritz, Zachman, Clark and Williams.

37.     Upon information and belief, Zachman, Clark and Williams could not have entered into their NDAs without the approval of their employer, MV Realty.  Upon information and belief, MV Realty caused Zachman, Clark and Williams to enter into the NDAs.

38.     The agreed common purpose of the NDAs was for the parties to explore and evaluate the Business Opportunity with a view toward pursuing the Business Opportunity jointly.

39.     Upon information and belief, MV Realty had no knowledge of the Business Opportunity prior to the existence of the NDAs.  The NDAs permitted MV Realty to learn about the Business Opportunity, obtain Confidential Information, and participate in the exploration and evaluation of the Business Opportunity.

**C.  INTERFERENCE WITH NDAS BY MV REALTY**

40.     On August 8, 2018, Counter-Defendant MV Realty declared its intention to engage in transactions in connection with the Business Opportunity.  MV Realty stated that it "intends to enter into agreements with homeowners by which the homeowner receives an upfront payment in exchange for giving MV Realty the first right of refusal to list the home when the homeowner decides to sell the home in the future." (MV Complaint ¶79).  Such transactions are RTL Transactions, which are part of the Business Opportunity.

41.     Upon information and belief, MV Realty's intentions have been and will be carried out by its employees and agents.  Information about which employees and agents have and will carry out MV Realty's intentions is peculiarly within the control of MV Realty.

42.     Zachman, Clark and Williams are employees of MV Realty.  Each of Zachman, Clark and Williams was previously involved in joint efforts to develop the Business Opportunity and therefore each of them is likely to possess Confidential Information.  Each of them also has experience with RTL Transactions as a result of those joint efforts.  As described above, each of Zachman, Clark and Williams entered into a NDA with Innovatus.

43.     Upon information and belief, MV Realty has required and will require its employees to participate in MV Realty's pursuit of RTL Transactions, including preparatory steps such as obtaining a license to use a patent associated with RTL Transactions.

44.     Upon information and belief, Zachman, Clark and Williams have participated and will participate in MV Realty's pursuit of RTL Transactions.

45.     Zachman, Clark and Williams have breached and will breach their NDAs by participating in MV Realty's pursuit of RTL Transactions.  These breaches will have been caused by the actions of their employer, MV Realty.

46.     In addition, Zachman and Neuman, owners of MV Realty who have NDAs with Innovatus, will profit from MV Realty's unauthorized pursuit of the Business Opportunity.  This will breach their NDAs, including the implied covenant of good faith and fair dealing to which each is subject under those NDAs.

47.     MV Realty's interference with the NDAs is unjustified, in bad faith and done with conspiratorial motives.

48.     MV Realty intends to retain and use its knowledge of the Business Opportunity and Confidential Information.

49.     MV Realty intends to use the information it obtained by virtue of the NDAs for a purpose other than exploring and evaluating the Business Opportunity and pursuing it jointly with Innovatus.

**D.  AN INJUNCTION IS WARRANTED**

50.     Counter-Plaintiff Innovatus is entitled to preliminary and permanent injunctive relief enjoining Counter-Defendant MV Realty and those acting on its behalf or in concert with it from directly or indirectly pursuing or taking advantage of the Business Opportunity.

51.     A monetary judgment will not adequately compensate Innovatus if Counter-Defendant MV Realty and its associates take advantage of the Business Opportunity without Innovatus' consent.  Among other things, Innovatus would lose the unique reputational and financial benefits of being (on information and belief) the first, or one of the very first, investment firms in the United States to utilize the Business Opportunity.  Counter-Plaintiff undertook significant steps to protect and preserve this opportunity, including requiring Neuman, Mitchell, Ritz, Zachman, Clark and Williams to enter into the NDAs.

52.     MV Realty and its associates must not be permitted to pursue the Business Opportunity without Innovatus' consent and abscond with valuable Confidential Information generated by Innovatus, in breach of the NDAs.  MV Realty and its associates obtained this information only by agreeing to work cooperatively with Plaintiff.  MV Realty and its associates should not be permitted to purloin the benefits of Innovatus' efforts for themselves.

<u>**COUNT ONE**</u>
**Breach of Contract against MV Realty**

53.     Counter-Plaintiff Innovatus hereby realleges the foregoing allegations as if fully set forth herein.

54.     Counter-Defendant MV Realty is a party to the NDAs signed by Zachman and Williams.

55.     MV Realty has declared its intention to pursue transactions in connection with the Business Opportunity.

56.     Upon information and belief, Counter-Defendant MV Realty has caused and will cause its employees Zachman and Williams to carry out its intention of pursuing transactions in connection with the Business Opportunity.

57.     Employees with NDAs who carry out MV Realty's intentions to pursue transactions in connection with the Business Opportunity thereby have breached and will breach their NDAs.

58.     Owners of MV Realty who have NDAs will breach their NDAs, including the covenant of good faith and fair dealing, by profiting from MV Realty's pursuit of transactions in connection with the Business Opportunity.

59.     MV Realty is and will be the cause of these breaches.

60.     In causing Zachman and Williams to breach the NDAs among MV Realty, Innovatus and Zachman and MV Realty, Innovatus and Williams, respectively, MV Realty has and will itself breach those NDAs, including the implied covenant of good faith and fair dealing.

61.     These breaches will cause Counter-Plaintiff Innovatus to suffer irreparable harm.

62.     By reason of the foregoing, Counter-Plaintiff Innovatus is entitled to injunctive relief.

63.     By reason of the foregoing, Counter-Plaintiff Innovatus has been damaged and is also entitled to judgment against MV Realty for damages in an amount to be determined at trial.

## COUNT TWO
### Tortious Interference with Contract against MV Realty

64.     Counter-Plaintiff Innovatus hereby realleges the foregoing allegations as if fully set forth herein.

65.     Counter-Defendant MV Realty has declared its intention to pursue transactions in connection with the Business Opportunity.

66.     Employees and owners of MV Realty have entered into NDAs with Counter-Plaintiff Innovatus.

67.     MV Realty is aware that its employees and owners have entered into NDAs with Counter-Plaintiff Innovatus.

68.     Upon information and belief, MV Realty has caused and will cause its employees to carry out its intention of pursuing transactions in connection with the Business Opportunity.

69.     Upon information and belief, employees with NDAs who carry out MV Realty's intentions to pursue transactions in connection with the Business Opportunity thereby have breached and will breach their NDAs.

70.     Owners of MV Realty who have NDAs have breached and will breach their NDAs, including the covenant of good faith and fair dealing, by profiting from MV Realty's pursuit of transactions in connection with the Business Opportunity.

71.     MV Realty is and will be the cause of these breaches.

72.     MV Realty has interfered and will interfere with the NDAs without justification, in bad faith and with conspiratorial motives.

73.     In causing Neuman, Mitchell, Ritz and Clark to breach their NDAs, MV Realty has and will tortiously interfere with those NDAs.

74.     MV Realty's tortious interference will cause Counter-Plaintiff Innovatus to suffer irreparable harm.

75.     By reason of the foregoing, Counter-Plaintiff Innovatus is entitled to injunctive relief.

76.     By reason of the foregoing, Counter-Plaintiff Innovatus has been damaged and is also entitled to judgment against MV Realty for damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Counter-Plaintiff Innovatus prays for relief and judgment as follows:

1.  Awarding Counter-Plaintiff a preliminary injunction against Counter-Defendant, its officers, agents, servants, employees, attorneys and other persons who are in active concert or participation with Counter-Defendant (the "**Enjoined Persons**"), prohibiting the Enjoined Persons from directly or indirectly pursuing or taking advantage of the Business Opportunity or using, relying on, and/or disclosing Confidential Information without the consent of Counter-Plaintiff during the pendency of this Action, or causing or allowing any other person to do so;

2.  Awarding Counter-Plaintiff a permanent injunction against the Enjoined Persons, prohibiting the Enjoined Persons from directly or indirectly pursuing or taking advantage of the Business Opportunity or using, relying on or disclosing Confidential Information without the consent of Counter-Plaintiff, or causing or allowing any other person to do so;

3.  Compensatory damages for breach of contract and tortious interference with contract in an amount to be determined at trial, plus prejudgment interest; and

4.  Awarding such other relief as this Court may deem just and proper.

Dated:  August 29, 2018

Respectfully Submitted,

_/s/ Gregory P. Joseph_
Gregory P. Joseph
Peter R. Jerdee
Samuel N. Fraidin
JOSEPH HAGE AARONSON LLC
485 Lexington Avenue, 30th Floor
New York, New York 10017
Tel. 212-407-1200
gjoseph@jha.com

801201