UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
INNOVATUS CAPITAL PARTNERS, LLC,    :
                                    :
    Plaintiff,                      :
                                    :
                                    :   Case No. 1:18-cv-04252-LLS
    - against-                     :
                                    :
                                    :
                                    :
JONATHAN NEUMAN, ANTHONY            :
MITCHELL, RITZ ADVISORS, LLC, GREG  :
WILLIAMS, DARYL CLARK, AND          :
AMANDA ZACKMAN,                     :
                                    :
    Defendants.                     :
                                    :
-------------------------------------------------------X
                                    :
MV REALTY, PBC, LLC,                :   Case No. 1:18-cv-07142-LLS
                                    :
    Plaintiff,                      :
                                    :
    - against-                     :
                                    :
                                    :
                                    :
INNOVATUS CAPITAL PARTNERS, LLC,    :
                                    :
    Defendant.                      :
                                    :
-------------------------------------------------------x

### DECLARATION OF JOSEPH SCHOTTLAND
### ON BEHALF OF INNOVATUS CAPITAL PARTNERS, LLC

    I, Joseph Schottland, declare under penalty of perjury as follows:

    1.    I submit this Declaration in support of Innovatus Capital Partners, LLC's ("Innovatus") Motion to Seal Portions of the MV Realty Parties'[1] May 24, 2021 Pre-Motion Conference Letter (the "May 24 Discovery Letter") and the MV Realty Parties' June 9, 2021 Reply

---

[1] The "MV Realty Parties" or "MV" refer collectively to Defendants and Counter-Claimants Jonathan Neuman, Antony Miller, Ritz Advisors, LLC, Greg Williams, Daryl Clark, and Amanda Zachman in the first above-captioned action, and Plaintiff MV Realty PBC, LLC in the second above-captioned action.

1

Letter in further support of the Discovery Letter (the "June 9 Discovery Letter") (collectively, the "Discovery Letters").

2. I am over 18 years of age and am competent to testify to the matter stated herein.

3. From 2016 to 2019, I worked at Innovatus Capital Partners, an independent investment advisor and portfolio management firm, and focused my work in part on identifying growth opportunities in less obvious market segments and investing through various channels including joint ventures. I am currently the CEO of AMWCo, LLC, parent company of AMWCo (TX), LLC d/b/a Redibs ("Redibs"), which is the operating entity of Innovatus' Right-to-List ("RTL") business.

4. I am personally familiar with the facts set forth herein.

5. Innovatus has produced information and documents to the MV Realty Parties in response to their discovery requests, including many sensitive, proprietary documents. Innovatus closely guards its competitively sensitive and proprietary business information, including that which it shares with its business partners and affiliates through the use of nondisclosure agreements, among other things.

6. Innovatus has produced a large number of competitively sensitive information and documents reflecting, among other things, its proprietary business methods and plans, market research, sales and marketing strategies, and financial information with the designation of "Confidential" or "Highly Confidential" (*i.e.*, attorneys' eyes only) under the Protective Order governing these actions. Innovatus thus produced these materials to the MV Realty Parties in reliance on the understanding and agreement that they would be protected by safeguards restricting access by competitors generally and, in the case of highly confidential documents, restricting access to the MV Realty Parties' outside counsel. Given that the MV Realty Parties have already

taken and are misusing Innovatus' valuable business methods and information to compete unfairly with Innovatus, the Protective Order is critical to preventing the MV Realty Parties (and other competitors) from inflicting further damage over and above the harm which resulted from the initial improper taking of competitively sensitive information.  To publicly release this information will cause Innovatus substantial competitive harm, harm which would be in addition to that which it has already suffered in 2018 and since, as a consequence of the improper conduct of the MV Realty Partners when they failed to keep their non-disclosure and non-circumvention promises to Innovatus.

7. The MV Realty Parties' Discovery Letters both incorporate highly confidential and competitively sensitive business information concerning Innovatus' business methods, proprietary business development strategy, and financial projections concerning its pursuit of RTL contracts after the MV Realty Parties, in April 2018, launched their own competing business in violation of their contractual non-disclosure and non-circumvention obligations.  Innovatus designated the documents containing this information as "Highly Confidential" (*i.e.*, attorneys' eyes only) at the time of production in order to avoid the "financial [or] competitive . . . injury" contemplated by the Protective Order, or "Confidential" in the case of information that Innovatus previously shared with the MV Realty Parties during the period they worked together.

8. Specifically, the Discovery Letters reveal information about the following:

a. <u>Detailed Road Map to Innovatus' RTL Business</u>.  The MV Realty Parties attached in full to the June 9 Discovery Letter, as Exhibit A, the comprehensive list of methods that Innovatus provided in response to the MV Realty Parties' Interrogatories.  Exhibit A itemizes each proprietary RTL method that Innovatus claims the MV Realty Parties took when they broke off from the contemplated joint venture and started their own RTL business in violation of their

agreements. Innovatus designated these methods as Confidential under the Protective Order. The list also sets out for each method which individuals developed it, whether Innovatus had used the method (directly or indirectly) since the filing of the Complaint in this action, and whether Innovatus currently uses the method (directly or indirectly). Innovatus designated this information regarding the use of the methods as Highly Confidential under the Protective Order. As a centralized listing of Innovatus' confidential RTL methods, Exhibit A is replete with competitively sensitive information that, if revealed publicly, would harm Innovatus and benefit current and future competitors. The items together, as a whole, provide a roadmap for any competitor seeking to enter the RTL business. Indeed, the very purpose of the document was to identify the information and methods that Innovatus shared with the MV Realty Parties on a confidential basis. In addition, the items in the list, on their own, are confidential and competitively sensitive. Innovatus invested significant intellectual capital into developing the methods and maintaining their confidentiality. If they were publicly disclosed, that would unduly benefit competitors and harm Innovatus by granting competitors a window into Innovatus' confidential business methods. To take just a few examples (from Exhibit A's numbered list of methods):

> i. <u>Number 7</u>. This item describes a particular agreement that Innovatus developed, lists 15 concepts incorporated by the agreement, and explains why those concepts are important. The agreement is not boilerplate but was created by Innovatus to solve specific challenges it had identified in bringing the RTL business to market—including challenges specific to Florida's legal landscape. The agreement thus represents Innovatus' own research and innovation. If disclosed, this information, which was provided to the MV Realty Parties in reliance on the non-disclosure and non-circumvention obligations it undertook, would provide all

other current and future competitors with, among other things, the identification of each of the legal obstacles which need to be addressed to move a similar RTL business forward and the best mechanisms to be used to clear those hurdles. Thus, with this information, competitors could quickly incorporate into their own agreements the answers derived by Innovatus after its expenditure of substantial time, money, and creativity. The ability to use this information, and keep it confidential, is invaluable both because it is far from certain that a particular competitor could identify the questions and solutions found by Innovatus and, at a minimum, certainly could not do so without incurring the burden, in both time and money, of that development. In addition, revealing this information publicly would give competitors a set of Innovatus' insights that would necessarily lead to other insights, such as the particular manner Innovatus selected to protect the confidentiality of its information and how similar challenges should be identified and addressed in different markets.

      ii.      <u>Number 10</u>. This item lists a number of significant tasks that Innovatus identified as being critical enough to exercise the discipline to continually track. For example, the seventh bullet point identifies certain market statistics that Innovatus integrated into its business model, which allowed it to more precisely predict future profitability. It is neither common knowledge that this data exists nor what the sources of such information are. And, it is not generally known how this data, if gathered, could best be utilized to improve the modeling of the RTL business. Rather, it was only through Innovatus' insight, work, and investment that this type of data was pinpointed, its sources discovered, and the importance of its use in the

RTL business recognized. Its release would advantage competitors by alerting them to sources of information which they might well know nothing about, let alone how to most effectively use that information for their business modeling.

   iii.  <u>Number 17</u>. This item references the protocols that Innovatus implemented to appropriately safeguard and keep confidential its RTL business concept as a whole and its other proprietary RTL methods in particular. This confidentiality regime was designed by Innovatus and based on its own research, experience, and innovation. If this information were released to competitors, they would receive access to Innovatus' intellectual capital without having to make a similar expenditure of time or resources themselves.

   iv.  <u>Number 18</u>. This item identifies two specific real estate data providers that Innovatus contracted with and a report obtained from one of these data providers. The report is described in detail, including how Innovatus used the report's data to define and target specific markets in which to focus its RTL business. Innovatus' decision to use these particular vendors to generate the report listed and others is proprietary. Competitors could use this information to short-circuit their own searches for quality vendors and as a guide for how to use those vendors' data. This would provide them with Innovatus' intellectual capital providing them with a jump start and, at a minimum, saving them the time and expense that Innovatus incurred.

In each of the above examples, publicizing the information described would benefit Innovatus' competitors while simultaneously disadvantaging Innovatus. Moreover, the document itself—as a whole and in each of its parts—is critically important because it reveals the building blocks of

Innovatus' RTL business.  These building blocks represent years of thinking, testing, trial-and-error, experience, and investment by Innovatus.  Dropped into the hands of competitors or would-be competitors, Exhibit A provides a road map for how to quickly leapfrog the normal developmental steps which otherwise would take years and substantial amounts of financial capital to achieve.  The descriptions of each method would alert competitors to what Innovatus has determined is important to the business, what information must be considered, how to solve the challenges that may arise, and—critically—a checklist of the fundamental challenges which must be confronted and overcome.  For example, the method described in Number 7 above reveals issues in the legal landscape that a new market participant may not know about.  Making that competitor aware of Number 7 would allow it to shorten the time necessary to compete, and could even determine whether that competitor becomes viable.  For all of these reasons, Exhibit A is quintessential competitively sensitive information that no business should have to reveal.  If the public were able to view it, the harms this lawsuit seeks to redress would only multiply as new competitors would obtain information about Innovatus' confidential business methods and further erode the market share that the MV Realty Parties already unfairly usurped.  Finally, the release of the information about who developed the methods and whether Innovatus has used or still uses those methods would benefit Innovatus' competitors, including the MV Realty Parties, because it would confirm for them what Innovatus considers to have continuing value, and thus would further guide them in entering the RTL business for themselves.

    b.  <u>Number of Innovatus' RTL Transactions</u>.  The May 24 Discovery Letter, in lines 8-10 of the third paragraph on page 1, discloses the number of RTL Transactions Innovatus had projected completing by the end of 2019 and the actual number it had completed by October 2019.  And the June 9 Discovery Letter, in line 4 of the second paragraph on page 2, again

7

references those results.  These early transactions functioned as a test of Innovatus' developing business strategy after the MV Realty Parties abandoned the contemplated joint venture.  This information would provide a benchmark for competitors to use in the early stages of their RTL business as they decide whether they are on the right track, should continue to invest, or whether the progress they have achieved is insufficient to justify continuing on with their RTL concept.  Moreover, Innovatus is not a public company and there is no reason why its private, internal financial projections and results should be publicly available.  This information discloses details about the performance of Innovatus' RTL business as of a specific moment in time.  Innovatus should be free to disclose such information, if at all, at a time it believes is appropriate, and in a manner that prevents the information from being mischaracterized by competitors in order to do harm in the marketplace.  Such mischaracterizations of confidential information in the fashion now being attempted by the MV Realty Parties puts innovators like Innovatus in an untenable situation, *i.e.*, either suffer unjustified harm or disclose current, additional information to correct any false impressions, thus revealing to the market further details about their business.

        c.      <u>Proprietary Information Regarding Management-Agent Relationship</u>.  The May 24 Discovery Letter, in lines 10-12 of the third paragraph on page 1, contains a quotation from a highly confidential internal Innovatus communication beginning with "pivot[]" and ending with "them."  The June 9 Discovery Letter, in lines 2-4 of the first carryover paragraph on page 3, provides an enlarged version of the quotation from the highly confidential internal Innovatus communication that the MV Realty Parties had included in the May 24 Discovery Letter.  When read as a whole, the communication shows Innovatus experimenting with the implementation of these methods so as to ascertain the best way to maximize the beneficial impact of those existing methods.  The cherry-picked quotation is proprietary information that Innovatus, as a privately

held company, should not be forced to convey to the public. The quotation, among other things, describes characteristics of the management–agent relationship with respect to the RTL business. Innovatus had been engaged in pilot testing its business concept with agents and, as a result, gained experience and knowledge about how it would best be able to work with agents. This represents Innovatus' intellectual capital which it spent significant time, money, and energy to create. If this quotation is made publicly available, Innovatus' competitors—including the MV Realty Parties—will receive the benefit of this knowledge, knowledge which they may never have been able to uncover themselves and certainly, in the best of circumstances, would not have been able to obtain without the investment of a similar amount of time, money, and intellectual effort.

        d.      <u>Proprietary Information Regarding Agent Preferences</u>. The June 9 Discovery Letter, in lines 9-12 of the first carryover paragraph on page 3, contains a quotation from a highly confidential internal Innovatus communication beginning with "need" and ending with "perform," as well as quotations from an attachment to that communication beginning with "Results" and ending with "business." This communication and attachment show that Innovatus was testing another channel for its business. It was experimenting with ways to implement its methods and learning how best to adapt them to a different market. The quotations describe information about agent behavior that Innovatus spent time and resources to learn. By engaging agents for initial test runs of the business, Innovatus was able to learn about agent preferences and tolerances, and began to identify ways to set up the business model that would best incorporate those considerations. This represents the accumulation of intellectual capital not available to Innovatus' competitors. If these quotations are made publicly available, Innovatus' competitors—including the MV Realty Parties—will be able to skip the time necessary to learn this information themselves and to do so at no cost to them. Once again, competitors would be able to enjoy a free

Case 1:18-cv-07142-LLS   Document 145   Filed 06/14/21   Page 10 of 12

ride on Innovatus and to gain time and position in the market, neither of which they would be entitled to.

    e. <u>Innovatus' Internal Investment Process and Accounting Decisions</u>.  The June 9 Discovery Letter, in lines 15-17 of the first carryover paragraph on page 3, references Innovatus' confidential internal process for how the company makes certain accounting decisions.  In addition, these lines contain a quotation from a highly confidential internal Innovatus communication beginning with "convert" and ending with "Investment."  This information reveals both *how* Innovatus goes about accounting for its investments and *what* specific accounting treatment was called for with respect to its RTL business.  Thus, this information provides an inside look at Innovatus' relevant financial processes and decisions.  As a privately held company, Innovatus is not required to publicly reveal these internal policies and procedures.  The disclosure of this confidential information is especially troubling in the context where a competitor, MV Realty, is attempting unfairly to transform it into a competitive weapon.  And, that is exactly what the MV Realty Parties' use of the quotation does:  by taking it out of context, they suggest that the accounting decision was somehow related to the overall success of Innovatus' RTL business.  This is simply not true. The disclosure here would disadvantage Innovatus because it would be forced to correct the misleading context of the disclosure of its confidential information and, in doing so, would have to provide additional sensitive information for competitors to use.

    f. <u>Proprietary Status of Innovatus' RTL Business</u>.  The June 9 Discovery Letter, in line 2 of footnote 3, contains a short quotation from a highly confidential Innovatus communication and the MV Realty Parties' characterization of other, unquoted portions of that communication.  The quotation, and the communication from which it was taken, refers to the state of development of Innovatus' RTL business at a specific time period.  The MV Realty Parties have

10

taken this communication out of context in their attempt to show that Innovatus' own assessment of its RTL business contradicts its position in this litigation that its methods are valuable. In reality, after the MV Realty Parties breached their agreements and took Innovatus' methods to unfairly compete against it, Innovatus had to regroup and consider how best to pursue the RTL business in light of the MV Realty Parties' breach. It took some time for Innovatus to determine how to restructure the business without the MV Realty Parties and how to avoid the risk of the same situation happening again. As a privately held company, Innovatus should not have to reveal details about its internal time frame for the development and operationalization of its business. In addition, for the same reasons as explained above, disclosing this information would disadvantage Innovatus because it would be forced to correct the misleading context of the disclosure and, in doing so, would have to provide additional sensitive information for competitors to use.

    g. <u>Proprietary Information Regarding Client Origination</u>. The June 9 Discovery Letter, in lines 3-5 of footnote 3, contains a quotation from a highly confidential internal Innovatus communication and the MV Realty Parties' characterization of other, unquoted portions of that communication. The communication shows Innovatus incorporating input from business partners concerning the methods at issue in this case. The statement at issue was a business partner's proposal to *expand* the RTL business to other markets. This type of confidential communication from a business partner, a communication which goes directly to the sensitive topic of plans to expand into new markets is quintessential highly confidential information. Again, the MV Realty Parties are trying to paint an inaccurate, one-sided picture in a setting where Innovatus has no meaningful opportunity to set the record straight. In addition, these lines reference details about Innovatus' approach to RTL client origination that Innovatus arrived at through trial and error, and on which they spent considerable time and resources. Thus, if this

quotation is made publicly available, Innovatus' competitors—including the MV Realty Parties—will be able to unfairly jump ahead by receiving the benefit of this knowledge without having to invest their own time and resources to make a similar discovery.

9.  For the reasons given above, if the Discovery Letters' references to and quotations of Innovatus' highly confidential information and confidential information are made public, Innovatus' competitors will benefit and Innovatus itself will be harmed.  Innovatus produced this competitively sensitive information in reliance on its ability to protect the highly confidential nature of the information.  As stated above, to publicly release this information will cause Innovatus substantial competitive harm, harm which would be in addition to that which it has already suffered in 2018 and since, as a consequence of the improper conduct of the MV Realty Partners when they failed to keep their non-disclosure and non-circumvention promises to Innovatus.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 14, 2021.

_____

Joseph Schottland