# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
INNOVATUS CAPITAL PARTNERS, LLC,  :
:
    Plaintiff,  :
:
       - against-  :     Case No. 1:18-cv-04252-LLS
:
:
JONATHAN NEUMAN, ANTHONY  :
MITCHELL, RITZ ADVISORS, LLC, GREG  :
WILLIAMS, DARYL CLARK, AND  :
AMANDA ZACKMAN,  :
:
    Defendants.  :
:
-----------------------------------------------------------X

MV REALTY, PBC, LLC,  :     Case No. 1:18-cv-07142-LLS
:
    Plaintiff,  :
:
       - against-  :
:
:
INNOVATUS CAPITAL PARTNERS, LLC,  :
:
    Defendant.  :
:
-----------------------------------------------------------x

## DECLARATION OF JOSEPH SCHOTTLAND
## ON BEHALF OF INNOVATUS CAPITAL PARTNERS, LLC

I, Joseph Schottland, declare under penalty of perjury as follows:

1.     I submit this Declaration in support of Innovatus Capital Partners, LLC's ("Innovatus") Letter Response in support of the MV Realty Parties'[1] November 18, 2021 letter

---

[1] The "MV Realty Parties" or "MV" refer collectively to Defendants and Counter-Claimants Jonathan Neuman, Antony Miller, Ritz Advisors, LLC, Greg Williams, Daryl Clark, and Amanda Zachman in the first above-captioned action, and Plaintiff MV Realty PBC, LLC in the second above-captioned action.

1

motion to seal (Dkt. 240)[2] their November 18, 2021 pre-motion conference letter (the "Letter") and attached exhibits (Dkt. 241 and Dkt. 241-1 through 241-25).

2. I am over 18 years of age and am competent to testify to the matter stated herein.

3. From 2016 to 2019, I worked at Innovatus Capital Partners, an independent investment advisor and portfolio management firm, and focused my work in part on identifying growth opportunities in less obvious market segments and investing through various channels including joint ventures. I am currently the CEO of AMWCo, LLC, parent company of AMWCo (TX), LLC d/b/a Redibs ("Redibs"), which is the operating entity of Innovatus' Right-to-List ("RTL") business.

4. I am personally familiar with the facts set forth herein.

5. Innovatus has produced information and documents to the MV Realty Parties in response to their discovery requests, including many sensitive, proprietary documents. Innovatus closely guards its competitively sensitive and proprietary business information, including that which it shares with its business partners and affiliates through the use of nondisclosure agreements, among other things.

6. Innovatus has produced many competitively sensitive documents reflecting, among other things, its proprietary business methods and plans, market research, sales and marketing strategies, and financial information with the designation of "Confidential" or "Highly Confidential" (*i.e.*, attorneys' eyes only) under the Protective Order governing these actions. Innovatus thus produced these materials to the MV Realty Parties in reliance on the understanding and agreement that they would be protected by safeguards restricting access by competitors generally and, in the case of highly confidential documents, restricting access to the MV Realty

---
[2] All citations to "Dkt." herein refer to the docket entries in *Innovatus Capital Partners, LLC v. Neuman*, No. 1:18-cv-04252-LLS (S.D.N.Y.).

Parties' outside counsel. Given that the MV Realty Parties have already taken and are misusing Innovatus' valuable business methods and information to compete unfairly with Innovatus, the Protective Order is critical to preventing the MV Realty Parties (and other competitors) from inflicting further damage over and above the harm which resulted from the initial improper taking of competitively sensitive information. To publicly release this information will cause Innovatus substantial competitive harm, harm which would be in addition to that which it has already suffered in 2018 and since, as a consequence of the improper conduct of the MV Realty Parties when they failed to keep their non-disclosure and non-circumvention promises to Innovatus.

7. The MV Realty Parties' Letter and its attached exhibits contain highly confidential and competitively sensitive business information concerning Innovatus' business methods, proprietary business development strategy, results, and financial projections concerning its pursuit of RTL contracts after the MV Realty Parties, in April 2018, launched their own competing business in violation of their contractual non-disclosure and non-circumvention obligations. Innovatus designated the documents containing this information as "Highly Confidential" (*i.e.*, attorneys' eyes only) at the time of production to avoid the "financial [or] competitive . . . injury" contemplated by the Protective Order.

8. Specifically, the Letter and its exhibits reveal information about the following:

   a. <u>Level of Investment, Number of RTLs, and Business Projections and Results</u>. The MV Realty Parties' references to these materials include the following:

   - Letter, page 3, third full paragraph, lines 8–9, starting with "lost" and ending with "employees";
   - Letter, full paragraph at the end of page 3 and continuing to the top of page 4;
   - Letter, page 4, last two lines of second full paragraph;

- Letter, page 5, second full paragraph, lines 1–2;

- Letter, page 5, third full paragraph, line 3, first two words;

- Letter, page 5, third full paragraph, last two lines;

- Letter, page 5, fourth full paragraph, line 1;

- Letter, page 7, first paragraph, lines 3–5, starting with "At" and ending with "program"; and

- Exhibits 3, 6–7, 11, 13–16, and 19–24.[3]

Specifically, the MV Realty Parties reference Innovatus' confidential information regarding the amount of its investment in Redibs, the number of completed RTL transactions as of different dates, and the results of the RTL business over time. The disclosure of this information would benefit competitors in the RTL marketplace and harm Innovatus. For example, Innovatus' investment information, number of RTL transactions, and purported business results would provide a guideline against which competitors or would-be competitors could measure their own investment decisions in the early stages of their RTL businesses. These competitors would thereby be aided in their decisions regarding whether their businesses are sufficiently developed within the time horizon that Innovatus' RTL business presents, whether and how much they should continue to invest, and whether their progress in developing the business justifies continuing their RTL business models. Having Innovatus' confidential information would therefore give these competitors an advantage over Innovatus, who does not have similar information from these competitors, and who did not have it when it put in the difficult work of progressing its business concept over the last four years.

---

[3] The exhibit numbers in the Letter do not match to the docket numbers under Dkt. 241. To promote clarity, all references to exhibit numbers herein will reflect the docket numbers—*i.e.*, "Ex. 1" is Dkt. 241-1, "Ex. 2" is Dkt. 241-2, etc.

In addition, Innovatus is not a public company and there is no reason why its private, internal financial projections and results should be made publicly available. This information discloses details about the performance of Innovatus' RTL business and its own investment decisions as of specific moments in time. As presented in the Letter, this information is misleading and devoid of proper context. Innovatus should be free to disclose such information, if at all, at a time it believes is appropriate, and in a manner that prevents the information from being mischaracterized by competitors in order to do harm in the marketplace. If this information is disclosed as-is, Innovatus would be put in the difficult position of either, on the one hand, suffering unjustified harm or, on the other hand, disclosing additional current and competitively sensitive information to correct these false impressions.

    b. <u>Internal Strategic Business Development Decisions and Deliberations</u>. The MV Realty Parties' references to these materials include the following:

- Letter, page 2, second full paragraph in its entirety;

- Letter, page 2, third full paragraph, lines 1–6;

- Letter, page 2, footnote 2 in its entirety;

- Letter, page 4, first full paragraph in its entirety;

- Letter, page 4, second full paragraph, lines 1–6;

- Letter, page 4, last three paragraphs in their entirety;

- Letter, page 4, footnote 3 in its entirety;

- Letter, page 5, first three paragraphs in their entirety;

- Letter, page 5, fourth full paragraph, lines 3–4, starting with "According" and ending with "model";

- Letter, page 5, Heading III, starting with "insulate" and ending with "Provision";

- Letter, page 5, last paragraph, lines 2–4, starting with "using" and ending with "competition";

- Letter, page 6, first two paragraphs in their entirety;

- Letter, page 6, third paragraph, lines 1–13, starting with "Even" and ending with "provision";

- Letter, page 6, third paragraph, last two lines;

- Letter, page 6, last paragraph, last two lines, starting with "An" and ending with "1st";

- Letter, page 7, first paragraph, lines 1–3, starting with "mover" and ending with "NDA";

- Letter, page 7, first paragraph, last two lines, starting with "But" and ending with "competition"; and

- Exhibits 1–7, 10–22, and 24.

The information the MV Realty Parties have included is drawn from competitively sensitive materials explaining, in detail, Innovatus' RTL business. These include multiple internal memoranda, presentations, emails, and other documents discussing the company's and Redibs' historical and current RTL-related strategic analysis and decision-making, planning and modeling, detailed development and operational reporting, allocation of resources, market assessments, and survey results, among other things. These documents thus form a roadmap to Innovatus' RTL business, as they show in detail which strategies and ideas were successful and which did not work as well. Similar to the above, if competitors were to gain access to these materials, they would be able to enjoy the benefits of Innovatus' hard work without incurring the cost that Innovatus has expended to generate this intellectual capital. This would harm Innovatus, who does not have similar access to its competitors' intellectual capital.

Furthermore, this information is presented largely without context so that it will support the MV Realty Parties' misleading narrative with respect to the value and prospects of Innovatus'

6

RTL business. As explained above, disclosing this information would disadvantage Innovatus because it would then be forced to supplement the incomplete context of the disclosure and, accordingly, would have to disclose additional sensitive information that competitors could then use. There is no reason why Innovatus, as a privately held company, should be forced to reveal its internal deliberations and discussions about the constitutive issues, challenges, goals, results, lessons learned, and strategies of its business.

      c.    <u>Actual and Prospective Business Partners</u>. The MV Realty Parties' references to these materials include the following:

- Letter, page 6, footnote 4 in its entirety; and
- Exhibits 7, 21, and 24.

In the Letter, the MV Realty Parties identify by name a prospective Redibs brokerage partner. The attached exhibits also include references to other third-party business partners. There is no justification for the MV Realty Parties to name the various third-party business partners that Redibs is pursuing or with whom it has transacted. Disclosure of the identities of these business partners will cause harm to Innovatus, as information about these potential or actual partners will provide competitors with data about the nature of these business relationships—and, specifically, will disclose to Innovatus' competitors which entities are willing potential partners in this business. As mentioned previously, this kind of one-sided information flow harms Innovatus because it does not have reciprocal access to similar data from its competitors. Moreover, publicly exposing the identities of these partners unnecessarily implicates them in this litigation, which can have—and has had, in certain instances—a deterrent effect on these partners' willingness to work with Innovatus and/or Redibs.

d. <u>Specific RTL Business Methods</u>. The MV Realty Parties' references to these materials include the following:

- Letter, page 2, footnote 1 in its entirety; and

- Letter, page 3, first full paragraph, line 12, starting with "As Mr." and ending with "week."

The MV Realty Parties have included references to various Innovatus-created methods that Innovatus has identified in this litigation as central to its proprietary RTL business model. These methods are competitively sensitive information that, if revealed publicly, would harm Innovatus and benefit current and future competitors. Innovatus invested significant intellectual capital into developing the methods and maintaining their confidentiality. As above, disclosing Innovatus' methods will provide a roadmap to its competitors regarding how to run an RTL business. Moreover, this information was provided to the MV Realty Parties in reliance on the non-disclosure and non-circumvention obligations they undertook. Innovatus' ability to use this information, and keep it confidential, is invaluable both because it is far from certain that a particular competitor could identify the solutions found by Innovatus and, at a minimum, certainly could not do so without incurring the burden, in both time and money, of that development.

9. Moreover, nearly all of the exhibits attached to the Letter are Innovatus' most comprehensive, current, competitively sensitive business reporting, planning, and strategy documents. For example:

a. <u>Investment Committee Memoranda</u>. (Exhibits 11, 13–15, 19, and 22.) The Investment Committee memoranda are the key reporting mechanisms to Innovatus' Investment Committee of all relevant information about its investment in Redibs and the progress and prospects of the Redibs business. They provide the level of investment to date, Redibs' current valuation, a detailed write-up on the state of the business that reports on the core aspects of the

Redibs development effort, financial statements and related management commentary, data supporting various ongoing strategic initiatives and decision points, financial analysis and statistics, descriptions of current management and organizational structure, evaluations of possible investment exit opportunities, financial projections and explanations of related assumptions, narrative descriptions of the current operations model, regulatory and compliance factors, a roadmap of Redibs' key technology platform and upcoming milestones, longer-term business plans and operational forecasts, and a discussion of risks to the business and offsetting measures Redibs has instituted or planned. Accordingly, these memoranda represent the capstone of Innovatus' strategic thinking regarding its RTL business.

b. <u>Presentations</u>. (Exhibits 3–7, 16–18, 20–21, and 24.) These presentations are also critical repositories of strategic analysis pertaining to Redibs, reporting on a range of financial, operational, and planning topics over time and incorporate management's feedback and decision-making.

c. <u>FLR Tracker</u>. (Exhibit 23.) The FLR Tracker, which is dated as of September 30, 2021, is an Excel spreadsheet containing extensive data for all RTLs Redibs has entered to date.

d. <u>Internal Email Discussions and Notes</u>. (Exhibits 1–2, 10, and 12.) Along with the sensitive documents listed above, the internal email discussions and notes provide details further filling in the thought processes behind management's decision-making over the course of development of Innovatus' RTL business.

The documents listed above were created by Innovatus and based on years of its own research, trial-and-error, thinking, discussions, experience, investment, and innovation. They represent an extraordinary amount of highly confidential information. If this information were

released to competitors or would-be competitors, they would receive access to Innovatus' core intellectual capital without having to make similar expenditures of substantial time and resources themselves. This is especially true of the Investment Committee memoranda, which provide a complete inside look at the Redibs business and are therefore quintessential examples of Innovatus' most competitively sensitive information. Innovatus must not be required to reveal to the public these documents or the information in them, as doing so would provide a free education to all of its actual and potential competitors. Finally, disclosing this information would disrupt Innovatus' ability to pursue its RTL business as there is no clear way for Innovatus to develop its confidential business concept effectively while operating under the very real and continuing risk that its most sensitive information will be revealed to its competitors and to the public.

10. For the reasons above, if the November 18 Letter's references to and quotations of Innovatus' highly confidential information and the associated highly confidential exhibits are made public, Innovatus' competitors will benefit at Innovatus' expense. Innovatus produced this competitively sensitive information in reliance on its ability to protect the highly confidential nature of the information. The public release of this information would cause Innovatus substantial competitive harm, harm which would be in addition to that which it has already suffered in 2018 and since, as a consequence of the improper conduct of the MV Realty Parties when they failed to keep their non-disclosure and non-circumvention promises to Innovatus.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 6, 2021.

                                                                                          _____

                                                                                          Joseph Schottland